**PAULSON et, Plaintiffs-Appellees, v HALL, Defendant-Appellant.**

Ohio. Appeals, Seventh District, Trumbull County.

No. 1152.    Decided March 13, 1947.

Guarnieri & Secrest, Warren, and Wilson & Wyatt, Youngstown, for plaintiffs-appellees.

W. B. Kilpatrick and G. P. & M. E. Gillmer, Warren, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Between "8:15" and "8:45" P. M. at or near sundown on July 17, 1945, a "mostly clear day" plaintiff Paulson, licensed by the Civil Aeronautics Association Board of the Department of Commerce of the United States to hold a private pilot's license, was piloting a Piper Cub Coupe aeroplane, of which he was co-owner, toward Hall's Air Field, situated in Howland Township, Trumbull County, Ohio, preparatory to landing on that field, which is owned and operated by defendant and is a government licensed airport, by reason of which license its facilities are available for all lawful purposes to those lawfully engaged in landing and "taking off" in airplanes.

Plaintiffs alleged in their petition filed in the court of common pleas, and plaintiff Paulson testified upon trial there, and claims here that as he approached Hall's unlighted airfield from the west he observed defendant's Piper J-2 Cub Trainer aeroplane ahead of him, and in accordance with the custom of following the traffic pattern of the base log and his practice of obeying the rules of the Civil Aeronautics Association Board for landing at an airfield followed defendant's Piper J-2 airplane, which was taxiing up on the right side, taxied into the same run-way in the same direction (easterly), and landed his plane in the same fashion at the same place as defendant, about 500 to 800 feet back of him; that when defendant's plane, which he or a student pilot was piloting, approached the easterly end of Hall's airfield the plane was turned toward the west sharply, and without stopping, giving any warning of his intentions, or observing plaintiffs' plane taxiing easterly behind him on Hall's Air Field, the operator thereof made a 180° turn on the ground, took off, and he (plaintiff Paulson) "undertook to get out of his way" when he "saw him make that turn"; that the Piper J-2 was piloted directly into plaintiffs' plane damaging it to the extent of $1200.00.

Defendant admitted by answer that he was the owner of the alleged airfield and Piper J-2 aeroplane; alleged in his cross-petition, testified upon trial in the court of common pleas, and claims by brief and oral argument here that "on the evening in question the flight pattern they had been

following conformed in every particular to the posted flight pattern for the field, and consisted of taxiing to the easterly limit of the field along the northerly run-way, making a turn to the right of 180°, making a take-off run to the west until the plane was airborne, veering to the left as the plane gained altitude, making a right turn of 180° so that the plane was again headed east, then nosing the plane into a gliding angle preparatory to a landing on the run-way at the northerly side of the field"; that plaintiff Paulson followed the defendant's plane at a distance of 200 to 300 feet "as it taxied in an easterly direction on the run-way" and landed such plane; that at the time and place alleged in plaintiffs' petition "he (defendant) was piloting his airplane in the customary pilot training maneuvers on his own field", operated by him "at his own expense"; that when his airplane reached the easterly limits of the field it stopped, turned to the right, headed west, when and where the student pilot was instructed concerning the contemplated take-off; that "as he was about to pilot his airplane on said field to the place where he was to take off", "along the southerly part of the run-way" of such field, plaintiff Paulson had then turned the plane he was piloting to the right and proceeded diagonally in a southeasterly direction from the northerly landing strip into the southerly take-off strip, and directly into the path of defendant's plane, all in violation of the flight pattern of such field, and "piloted his airplane directly into the path of defendant's airplane", "and a collision of said airplanes took place"; and by cross-petition prayed damages against plaintiffs in the amount of $215.00.

There is evidence that defendant made a good landing and that plaintiff Paulson's landing "was a very good landing", "was perfect" as far as the witness so testifying could see; that defendant admitted that he "should have quit a few minutes sooner" because "every airplane ought to be in by sundown", but yielded to the request of the student he was instructing to take-off once more; that he "couldn't get over as far to the south to take off on account of this windrow of hay"; that Hall's Air Field and the planes of the respective parties were unlighted when they collided, at which time defendant's plane "was some feet off the ground, and both planes were about 200 to 250 feet from the take-off"; that defendant didn't see plaintiffs' plane until it was within twenty feet of him, although it was there.

At the close of plaintiffs' case his counsel said "I was under the impression that Mr. Klinger (defendant's counsel) had

asked that this picture which Mr. Paulson had drawn (which was a sketch showing defendant turned left) asked that it be marked as plaintiff's Exhibit 2, and offer in evidence plaintiff's Exhibits 1 and 2". While the record does not disclose clearly, yet presumably plaintiffs' counsel further stated in open court "counsel for the defendant and plaintiff agree that the court shall take judicial notice of the Civil Aeronautics Association, rules in effect at the time of the accident. Therefore plaintiff withdraws plaintiff's Exhibit 1 (which was a copy of the rules of the Civil Aeronautics Association Board) and asks only that plaintiff's Exhibit 2 be admitted". The record discloses that the trial judge then said "Court: No objection being made plaintiff's Exhibit 2 may be admitted"; and plaintiff rested his case.

Defendant's witnesses Storey and Jackson drew charts showing defendant turned right, which his counsel offered in evidence "as part of" their "testimony". The trial judge sustained the objection of plaintiffs' counsel to the admission of these exhibits in evidence, and submitted the case to a jury, which returned a unanimous verdict in favor of plaintiffs for $1,000.00, and entered judgment for the plaintiffs on that verdict in the sum of $700.00 upon their acceptances of a remittitur in the sum of $300.00.

Defendant appealed to this court on questions of law from the judgment of the court of common pleas, and contends "that the court erred in the rejection of the evidence offered by defendant-appellant", to some of which reference has been made herein, and argues by brief that "the effect on the jury of admitting in evidence the exhibit of plaintiff showing a turn to the left by defendant, and rejecting the exhibits of defendant showing a turn to the right, was equivalent to having the court tell the jury they should not consider the testimony that defendant turned to the right, and that they should accept as an established fact that defendant turned to the left"; and claims that "said judgment is contrary to and against the manifest weight of the evidence".

"Pencil sketches, maps, and diagrams are frequently permitted to be introduced in evidence where they center about some facts which concededly existed at the time of the creation of the issue; but they must be shown accurately to represent the subject matter thereof. * * *" **17 O. Jur.** page **583.**

In the words of Judge Sullivan, recorded in the case of **Czerwinski v Ward Sons Co., 23 Oh Ap 306:—**

"It is clear, however, (in the case at bar) that the exhibit itself was not competent, for the reason that there was no testimony of a credible nature tending to show that the exhibit was accurate and made by a person with such sufficient knowledge of the circumstances as to be able to produce it.

"This situation makes the exhibit clearly incompetent * * *."

As clearly shown by the record defendant's sketches sought to be introduced in evidence were not accurate in measurements, did not properly present the situation claimed to exist, and were properly excluded. See **Tudor Boiler Mfg. Co., v Teeken, 33 Oh Ap 512.**

However, assuming the rule to be as counsel for defendant contends it is, and that the trial judge erred in sustaining the objection to the introduction of defendant's excluded exhibits, from the state of the record presented to us for review in our opinion such assumed or claimed error was not prejudicial to defendant and did not prevent him from having a fair trial as we are persuaded that the jury thoroughly understood the claims of the respective parties in this case. See §13449-5 GC.

The question whether plaintiffs' Exhibit 2 met the requirements of an exhibit of its nature properly admissible in evidence is not presented, and will not be determined for the obvious reason already stated that it was admitted without objection, and the record can be construed as indicating it was admitted by agreement whether an admissible or inadmissible exhibit.

If, as claimed by counsel for defendant, "the effect on the jury of admitting in evidence the exhibit of plaintiff showing a turn to the **left** by defendant, and rejecting the exhibits of defendant showing a turn to the **right**, was equivalent to having the court tell the jury they should not consider the testimony that defendant turned to the right, and that they should accept as an established fact that defendant turned to the left", which presents a question that viewing this case as we do we need not determine, that effect resulted from admission of such exhibit by agreement or without objection.

The record of the proceedings in the court of common pleas submitted to us for review has been read with care, and I have had no difficulty reaching the conclusion that the judgment of the court of common pleas is not clearly contrary to or against the manifest weight of the evidence as set forth in general in the factual statement of this opinion.

**Sec. 6310-43 GC**, provides:

"Any aircraft operated over or within the state of Ohio shall be operated in accordance with the air traffic rules then in effect established pursuant to the United States air commerce act of 1926."

Chief among such rules is the rule that in "taking off" from an airfield a pilot must observe other traffic and take precautions to avoid collision therewith. These rules were set forth briefly, but substantially, by the trial judge in his charge to the jury.

The judgment of the common pleas court is affirmed.

CARTER, PJ, NICHOLS, J, concur in judgment.